IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEGGY WORTHY, | CASE NO. CV-F-04-6134 LJO |
| Plaintiff, | **DECISION ON SOCIAL SECURITY COMPLAINT** |
| vs. | (Docs. 12, 16, 17.) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff Peggy Worthy ("plaintiff") seeks this Court's review of an administrative law judge's ("ALJ's") decision that plaintiff is not disabled and is ineligible for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433. Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties agreed to proceed before a United States Magistrate Judge, and by an December 23, 2004 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all proceedings. Based on review of the Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), this Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff disability insurance benefits or to remand for further proceedings.

# BACKGROUND

## Plaintiff's Personal Background

Plaintiff is age 38 and has a 12th grade education and past work experience as a receptionist, cleaner, waitress, housekeeper, and desk clerk. (AR 14, 59, 69, 75, 391.)

## Administrative Proceedings

On October 2, 2001, plaintiff filed with the Social Security Administration ("SSA") her application for disability insurance benefits to claim disability since October 20, 2000 based on "life going in circles – my brain feels numb – tingly in my neck – nervous breakdown – mentally unstable – menopause – headaches – depression – constipation – breathing off – weight loss – medication – energy loss – can't focus – nervous – [nauseous] – blurred vision – dizziness – angry – loss of interest in social and sex life." (AR 45.) With its August 22, 2002 Notice of Disapproved Claims, SSA denied plaintiff's claim and determined plaintiff's condition is not severe enough to prevent her to work. (AR 31.)

On October 8, 2002, plaintiff filed her Request of Reconsideration. (AR 35.) With its December 12, 2002 Notice of Reconsideration, SSA denied plaintiff's claim and again determined plaintiff's condition is not severe enough to prevent her to work. (AR 36.)

On February 5, 2003, counsel was appointed for plaintiff. (AR 27.) On February 7, 2003, plaintiff filed her Request of Hearing by Administrative Law Judge to claim that SSA's decision "does not reflect my true condition." (AR 40.) After a January 7, 2004 hearing, the ALJ issued his February 25, 2004 decision to conclude plaintiff "is still capable of engaging in her past relevant work." (AR 17.)

Plaintiff submitted to SSA's Appeals Council her March 4, 2004 Request for Review of Hearing Decision/Order to claim the ALJ's decision "does not reflect my true condition." (AR 7.) On June 18, 2004, the Appeals Council denied plaintiff's request to render the ALJ's decision as the Commissioner's final determination subject to this Court's review. (AR 6.)

## Medical History And Records Review

### *San Dimas Medical Group*

Plaintiff treated with San Dimas Medical Group, and during her September 14, 1993 annual examination, complained of being in a "high stress situation" as a newlywed and anxious to become pregnant. (AR 109.) Plaintiff was diagnosed with Amenorrhea, possibly due to low weight or stress.

1   (AR 109.) On October 30, 1996, plaintiff complained of headaches, depression and tiredness and noted
2   that she "left husband." (AR 106.) Prozac 10 mg was one of plaintiff's prescriptions, and on December
3   23, 1996, it was increased to 30 mg. (AR 104-106.) January 22, 1997 notes reflect plaintiff "has been
4   getting some counseling." (AR 103.)

*Kaiser Permanente*

6   Plaintiff treated with Kaiser Permanente, and in early February 1994 was diagnosed with
7   "anxiety/tension and associated tensions headaches" and was referred to counseling. (AR 114.) On
8   January 10, 1997, plaintiff was diagnosed with depression, marital discord and was referred to
9   counseling. (AR 113.) On January 21, 1997, codependency counseling was recommended for plaintiff.
10  (AR 112.) Progress notes reflect plaintiff took Motrin for headaches. (AR 112.)

*Kern County Mental Health*

12  Plaintiff treated with Kern County Mental Health after marital difficulties arose. (AR 198.) July
13  26, 1999 notes reflect that plaintiff claimed to have headaches for 10 years. (AR 194.) The notes
14  attribute plaintiff as reporting that she started drinking at age five, "used to be an alcoholic," and stopped
15  using crank and marijuana nine years ago. (AR 195.) The notes reflect a diagnostic impression of
16  adjustment disorder with mixed anxiety and depression, cannabis abuse, and headaches long term and
17  a fair prognosis. (AR 197.) A medical examination, group counseling and chemical dependency
18  counseling were recommended. (AR 197.)

19  On September 14, 2001, plaintiff presented as depressed and noted her son's leaving her home
20  resulted in her loss of Medi-Cal and child support and ability to pay for antidepressants. (AR 189.) On
21  October 17, 2001, plaintiff reported a history of headaches/migraines and complained of depression,
22  crying spells, decreased energy, poor memory, anxiety, difficulty controlling her anger, difficulty being
23  alone, recurrent negative thoughts, social withdrawal, difficulty concentrating, conflictual relationship
24  with husband, and low self-esteem. (AR 186.) Plaintiff reported last using marijuana six to eight months
25  ago. (AR 186.) Plaintiff further reported she has a high school diploma and two months education at
26  San Joaquin Valley College. (AR 186.) Plaintiff reported she worked for 11 months at Atco property
27  management and quit in 1999 when her employer would not allow her to decrease her hours. (AR 187.)
28  The diagnostic impression for plaintiff was depressive disorder not otherwise specified and history of

headaches/migraines by report. (AR 187.) The notes state: "This client applied for SSI and secondary gain is suspect. She does not appear to be suffering from chronic persistent mental illness, although she would benefit from counseling services in an effort to identify the triggers of her anger, depression, and irritability." (AR 188.)

On March 26, 2002, plaintiff complained of constant pain of fibromyalgia, early menopause and migraines, including daily headaches and body pain. (AR 180.) The notes reflect plaintiff applied for SSI six months ago but "no reply so far." (AR 182, 183.) The diagnostic impression for plaintiff was adjustment disorder with depressed mood and migraines and fibromyalgia, self-reported. (AR 183.) The notes reference plaintiff's numerous migraines, constant pain and inability to perform tasks of a woman her age. (AR 184.) Medication and group support were recommended. (AR 184.)

Plaintiff completed an undated form to note she experiences "bad headaches – mood swings." (AR 170.) She noted she received ongoing care for menopause and depression. (AR 173.)

Thomas Reese, M.D. ("Dr. Reese") completed an April 1, 2002 form to note that plaintiff claims she is unable to work because "of constant migraines, started menopause at age 25, bones ache." (AR 169.) Dr. Reese diagnosed asthma, headache and old laminectomy. (AR 169.) Dr. Reese answered questions that plaintiff was unemployable from April 1, 2002 to June 14, 2002 and is not employable. (AR 169.) As for comments, Dr. Reese merely noted: "Coughing may aggravate headaches and back pain. Previous laminectomy." (AR 169.)

A May 8, 2002 progress note reflected a diagnosis of depressive disorder, fibromyalgia, migraines and early menopause. (AR 166.) Plaintiff's Celexa was replaced with Effexor. (AR 166, 168.)

### *Mercy Hospital – Bakersfield*

On August 4, 2000, plaintiff presented at the emergency room of the Mercy Hospital in Bakersfield and complained of right side chest pain. (AR 130.) Plaintiff was discharged with a diagnosis of noncardiac chest pain and given Toradol 60 mg "with good relief." (AR 126.) On December 14, 2000, plaintiff presented to the emergency room and complained of right-side headache since the prior day and nausea without vomiting. (AR 116.) Plaintiff reported multiple past similar headaches and migraines of this type, the last of which was six months prior. (AR 116.) Imitrex 6 mg

produced "dramatic relief." (AR 116.) Plaintiff was assessed with migraine cephalgia and discharged with a prescription for Imitrex nasal spray. (AR 116.) Plaintiff was advised to use the Imitrex when her symptoms first begin. (AR 116.)

### *Central Valley Medical Group*

Plaintiff treated with Central Valley Medical Group. On January 18, 2001 and February 1, 2001, plaintiff was treated for a possible bladder infection and was assessed with pelvic pain and depression for which she was prescribed Celexa. (AR 317.) Plaintiff's February 12, 2001 pelvic ultrasound was normal. (AR 312.) On February 20, 2001, plaintiff complained of right eye burning and blurry vision. (AR 311.) On March 6, 2001, plaintiff complained of ear pain. (AR 310.) On May 14, 2001, plaintiff complained of back and neck pain because she had been thrown against the wall by her husband. (AR 308.) Plaintiff was prescribed Soma, heat, Tylenol #3 and Motrin. (AR 308.) May 15, 2001 spine x-rays were generally normal. (AR 307.) May 24, 2001 notes state: "thoracic trauma – go back to work." (AR 306.) On June 10 and 24, 2002, plaintiff complained of a rash all over and she was prescribed Midrin. (AR 302, 303.)

Based on plaintiff's headache history, she underwent a July 12, 2002 head CT, which was "ESSENTIALLY NEGATIVE CT SCAN OF THE BRAIN" in that "[t]he appearance of the brain is normal. There is no parenchymal abnormality or abnormal enhancement. There is no intracranial hemorrhage. There is no hydorcephalus." (AR 301; uppercase in original.) July 17, 2002 notes reflect headache on right side and Midrin helps. (AR 300.) Plaintiff's October 16, 2002 chest x-ray was normal. (AR 298.)

On October 30, 2002, plaintiff complained of body aches and rash and requested an electroencephalgram "(EEG)" study in light of her prior abnormal one. (AR 296.) Bruce Ishibashi, D.O. ("Dr. Ishibashi"), assessed Generalized Anxiety Disorder ("GAD")/depression. (AR 296.) Dr. Ishibashi completed an October 30, 2002 form to check boxes that plaintiff has a medically verifiable condition that would limit or prevent her from performing certain tasks. (AR 295.) Dr. Ishibashi checked off that plaintiff's condition is chronic, its onset date was June 15, 2002, and is duration is expected to last to December 31, 2002. (AR 295.) Dr. Ishibashi checked a boxes to state plaintiff is not able to work and has limitations to affect her ability to work. (AR 295.) Dr. Ishibashi did not identify plaintiff's

5

condition to support his check off responses. (AR 295.)

On November 14, 2002, plaintiff complained of ringing in her ears, spasms in her ears, vision problems, pain all over, fatigue and light sensitivity. (AR 289.) Dr. Ishibashi assessed GAD/depression and ordered another rheumatology/arthritis panel, the results of which were negative. (AR 286, 289.) On November 25, 2002, plaintiff complained of jittery and ringing in her hears, and Dr. Ishibashi assessed GAD and tinnitus. (AR 285.) On December 13, 2002, plaintiff complained of coughing, vomiting, mucous balls and nasal and chest congestion. (AR 387.)

On January 9, 2003, plaintiff requested a DMV physical to regain her driver's license. (AR 386.) On January 13, 2003, plaintiff needed a DMV form completed. (AR 385.) On February 3, 2003, plaintiff complained of coughing, vomiting and nausea. (AR 380.) Dr. Ishibashi assessed plaintiff with bronchitis and vertigo. (AR 380.) On February 10, 2003, plaintiff complained of pain below her back. (AR 379.) A February 14, 2003 lumbar spine x-ray was normal. (AR 381, 382.) On February 28, 2003, plaintiff complained of back pain, and Dr. Ishibashi assessed back pain and menopausal syndrome. (AR 378.) A March 11, 2003, GYN cytology was negative for intraepithelia lesion or malignancy. (AR 372, 377.) In July 2003, plaintiff complained of lower back pain for which she was given Tylenol #3. (AR 355.) On August 6, 2003, plaintiff complained she hit her head on a car door. (AR 353.) On September 17, 2003, plaintiff complained of headaches and was assessed with chronic headaches and depression. (AR 352.) On October 1, 2003, plaintiff noted headaches "come and go." (AR 351.) Plaintiff was assessed with tension headaches and depression and prescribed Soma. (AR 351.) A November 4, 2003 MRI scan of plaintiff's brain was negative in that "[t]he appearance of the brain is normal. There is no parenchymal abnormality or abnormal enhancement. There is no intracranial hemorrhage. There are no extra-axial fluid collections. There is no hydrocephalus." (AR 348.) On November 12, 2003, plaintiff was assessed with headaches and mood disorder. (AR 350.)

### *Kern Medical Center*

Plaintiff treated on a near monthly basis at Kern Medical Center. On July 31, 2001, plaintiff presented to the emergency room and was treated for an acute episode of migraines. (AR 261, 267.) Plaintiff was prescribed Benadryl and Toradol, and her discharge diagnosis was history of migraines and acute episode resolving. (AR 266.) Plaintiff was directed to follow up with family practice and mental

1  health. (AR 259.) On September 19, 2001, plaintiff presented at the emergency room and complained
2  of headaches. (AR 255.) She felt better with Toradol 60 mg, and was diagnosed with headache and
3  history of depression. (AR 256.) On October 9, 2001, plaintiff complained of headache and was
4  instructed to decrease sugar, caffeine and smoking. (AR 247, 251.) Notes reflect that Celexa works "by
5  easing mind but ran out 1 month ago." (AR 247.) Plaintiff was assessed with depression and headaches
6  with the plan to continue her medications. (AR 248.) On November 8 and 20, 2001, plaintiff
7  complained of coughing, wheezing and chest discomfort and was treated for bronchitis. (AR 242.)
8  November 28, 2001 notes reflect Celexa still working. (AR 236.) On December 26, 2001, plaintiff
9  complained of rash and back pain. (AR 234.)

10  On January 7, 2002, plaintiff complained of depression and headache and claimed "that she is
11  not getting a lot of help." (AR 232.) The notes reflect plaintiff "had work-up done in the past & wants
12  more done for her to find out whether her feeling this way is related to physical illness or all in her
13  head." (AR 232.) Plaintiff's Celexa was increased to 40 mg for her depression. (AR 231.) On February
14  7, 2002, plaintiff was "doing well" and plaintiff was assessed with depression and headache. (AR 223,
15  225.) On February 19, 2002 and April 8, 2002, plaintiff was assessed with depression among other
16  things. (AR 221.) On February 19, 2002, an ANA test for arthritis, a rheumatoid factor test, a
17  sedimentation rate test for rheumatolgic disorders, and a CBC were ordered. (AR 221.) The results
18  were negative or within normal limits. (AR217-219.) On April 8, 2002, plaintiff complained of body
19  aches for five months. (AR 215.) On April 12, 2002, plaintiff complained of dizziness, starring spells
20  and "overall body aches." (AR 213.) Plaintiff was assessed with depression among other things and
21  prescribed Elavil. (AR 214.)

22  Plaintiff underwent a May 9, 2002 EEG based on her history of depression, migraine headaches
23  and possible seizures. (AR 206.) The impression of the EEG was "an abnormal awake and drowsy EEG
24  due to intermittent sharp transients emanating principally from left temporal derivations. These findings
25  are potentially epileptiform, but are occasionally seen in those with migraine headaches." (AR 206.)

26  On May 13, 2002, plaintiff complained of chest pain, and was assessed with depression and
27  muscle spasm. (AR 209.) On May 28, 2002, plaintiff was assessed with depression and encouraged not
28  to drive due to starring spells. (AR 202, 203.) Plaintiff was started on Tegretol, an anti-convulsant.

(AR 204.) During her August 1, 2002 neurological consultation, plaintiff claimed she had experienced headaches for 12 years arising from stress, anger, chocolate, perfumes and foods. (AR 201.) Plaintiff complained of constant blurry vision and was assessed with history of headaches and depression. (AR 201.) Plaintiff was prescribed Depakote, an anticonvulsant and antimanic, and told to reduce stress. (AR 201.)

***Inyegar Malini, M.D., Consultative Psychiatrist***

Inyegar Malini, M.D. ("Dr. Malini"), a board certified psychiatrist, conducted a psychiatric evaluation of plaintiff and prepared a December 20, 2001 report in which Dr. Malini noted plaintiff's history of "constant headaches," "problems with concentration and memory," and denial of psychiatric hospitalization. (AR 152.) Dr. Malini further noted plaintiff's history of abuse of alcohol, marijuana and cocaine up to age 20 and claim of sexual molestation by her grandfather. (AR 153.) According to Dr. Malini, plaintiff quit her receptionist job which she had held for a year because of "family problems and severe headaches." (AR 153.) Dr. Malini noted that plaintiff's husband had left her a couple of weeks prior after a nine-year marriage and that plaintiff lives with her mother, helps her mother with the house, drives, watches television and stays to herself. (AR 153.)

Dr. Malini diagnosed depressive disorder, not otherwise specified, versus major depressive disorder. (AR 153.) Dr. Malini opined:

> . . From a psychiatric standpoint, she is able to understand, carry out, and remember simple instructions. Her persistence and pace is not significantly impaired. She is able to relate to coworkers, supervisors, and public in general. . . . She is able to accommodate herself to usual work changes in routine work settings. (AR 154.)

***Mental Residual Functional Capacity Assessment And Psychiatric Review Technique***

Clair Stegall, M.D. ("Dr. Stegall"), completed a January 3, 2002 Psychiatric Review Technique to note that plaintiff exhibits depressive syndrome characterized by appetite disturbance with change in weight, sleep disturbance, and difficulty concentrating. (AR 139.) Dr. Stegall found mild restriction of daily living activities and difficulties in maintaining social functioning, concentration, persistence or pace. (AR 146.) Marina C. Vea, M.D. ("Dr. Vea"), a psychiatrist, agreed with Dr. Stegall's findings. (AR 136.)

Dr. Stegall completed a January 3, 2002 Mental Residual Functional Capacity Assessment to

conclude generally that plaintiff is not significantly limited in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (AR 155-156.) Dr. Stegall noted plaintiff understands and remembers simple job instructions, sustains concentration, persistence and pace for one-to-three step job tasks, relates and interacts, and adapts to changes in work setting for simple, routine and repetitive tasks. (AR 157.) Dr. Vea agreed with Dr. Stegall's findings. (AR 157.)

Harvey Biala, M.D. ("Dr. Biala"), a psychiatrist, completed a December 10, 2002 Psychiatric Review Technique to conclude plaintiff has Adjustment Disorder. (AR 331.) Dr. Biala found mild restriction of daily living activities and difficulties in maintaining social functioning, concentration, persistence or pace. (AR 338.) Dr. Biala noted insufficient evidence of episodes of decompression. (AR 338.)

Dr. Biala completed a December 10, 2002 Mental Residual Functional Capacity Assessment to to find generally that plaintiff is not significantly limited in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (AR 342-343.) Dr. Biala found plaintiff is able to perform simple, unskilled work, maintain attention in two-hour increments, tolerate and maintain an ordinary schedule without need for close supervision, interact appropriately with the general public and coworkers, accept usual supervision, adapt and take appropriate precautions to usual changes in the work setting, and travel about the community. (AR 344.)

### *Physical Residual Functional Capacity Assessment*

Dr. Stegall completed an August 22, 2002 Physical Residual Functional Capacity Assessment to conclude plaintiff is able to: (1) lift/carry 10 pounds frequently and 20 pounds occasionally; (2) stand/walk six hours in an eight-hour workday; (3) sit about six hours in an eight-hour workday; and (4) push/pull subject to the lift/carry limitations. (AR 274.) Dr. Stegall noted neither postural, manipulative, visual, communicative nor environmental limitations, except avoidance of concentrated exposure to hazards (machinery, heights, etc.). (AR 275-277.)

Lavanya Bobba, M.D. ("Dr. Bobba"), completed a December 5, 2002 Physical Residual Functional Capacity Assessment to conclude plaintiff is able to: (1) lift/carry 10 pounds frequently and 20 pounds occasionally; (2) stand/walk about six hours in an eight-hour workday; (3) sit about six hours in an eight-hour workday; and (4) push/pull subject to the lift/carry limitations. (AR 319.) Dr. Bobba

noted neither postural, manipulative, visual, communicative nor environmental limitations. (AR 320-322.)

### *Medications*

Plaintiff's medications have included Celexa 20 mg, Maxalt – MLT 10 mg, Carisophodol 350 mg, Tylenol with Codeine, Motrin 800 mg, Acetaminophen, Trimethobenzamide 250 mg, Premphase 2.5 mg, Provera 10 mg, Estratest, Biaxin 500 mg, Cipro 250 mg, Zoloft 25-50 mg, Alburterol, Vanceril, Doc-a-lace 100 mg, Aciphex 20 mg., Duradrin, Elavil .75 mg (Amitriptyline), Duradrin, Hydrocodine/ADAP 7.5 mg, Ibuprofen 600 mg, Calcium Carbonate 650 mg, and Zyprexa. (AR 73, 76, 99, 100.)

## Plaintiff's Activities And Testimony

### *Reports And Questionnaires*

Plaintiff completed a September 29, 2001 Disability Report Adult to note that her ability to work is limited by "bad headaches – depression – menopause – can't focus – seem confused all the time – dizziness" so that plaintiff "cannot function fully." (AR 68.) Plaintiff became unable to work on December 20, 2000 and quit her last job in April 2000 because of "stress at home . . . could not take time off needed for doctor's appt. & counseling – was not able to focus on work duties due to problems at home." (AR 68.)

Plaintiff completed an October 25, 2001 Daily Activities Questionnaire to note that on an average day she watches television, tries to do "a little around the house," and tries to sit or lie around because she gets headaches easily. (AR 78.) Plaintiff prepares meals with her husband and grocery shops twice monthly. (AR 79.) Plaintiff does light cleaning and laundry and needs no help to complete chores. (AR 79.) Although reading causes plaintiff headaches, she reads the newspaper "a little bit." (AR 80.) Plaintiff drives to the store, her mother's home, and doctors' appointments. (AR 80.) Plaintiff has troubles remembering and paying attention and gets side tracked. (AR 82.) Plaintiff experiences headaches three to five times a weeks. (AR 82.) Medication causes plaintiff to be dazed and lightheaded. (AR 82.) Plaintiff has lost no job because of her condition. (AR 82.)

Ivan Worthy, plaintiff's husband, completed an October 26, 2001 Daily Activities Questionnaire (Third Party Information) to note that on a typical day, plaintiff "sits around all the time and bitches."

(AR 84.) Plaintiff and her husband prepare meals. (AR 85.) Plaintiff has no difficulties caring for her personal needs. (AR 85.) Plaintiff grocery shops twice a month. (AR 85.) Plaintiff performs general cleaning and needs no help for such chores. (AR 86.) Plaintiff has a driver's license and drives. (AR 86.) As for social activities, plaintiff "doesn't like to do anything anymore." (AR 88.) Plaintiff is forgetful and starts a project prior to completing another. (AR 88.) Plaintiff is afraid to do things "for fear her head will start hurting." (AR 88.) Plaintiff has difficulty to focus, is easily distracted and angered, and becomes emotional. (AR 89.)

Plaintiff completed an October 2, 2002 Reconsideration Disability Report to note that her symptoms had changed in that, among other things, she cannot sleep, is "dazing out more & more," and is distracted and forgetful, and experiences headaches and back, neck, arm and leg pain. (AR 90.) Plaintiff's driver's license was taken away due to an "abnormal EEG (seizures)." (AR 90, 92.) Plaintiff's headaches are "so bad" that she "feel[s] drugged up so much can't focus on what I need to." (AR 92.)

In an undated statement, plaintiff noted her condition had worsen due to fibromyalgia, migraines, heart and depression. (AR 98.)

### *Plaintiff's Hearing Testimony*

Plaintiff testified at the January 7, 2004 ALJ hearing that she is divorced and graduated from high school. (AR 391.) Plaintiff tries to work "a little bit with my mom to pay my bills." (AR 391.) Plaintiff helps her mother clean house when she can for a couple hours a day and returns home if she starts hurting. (AR 391.) Plaintiff earns about $500-$600 per month. (AR 391.) Plaintiff has worked as a receptionist, house cleaner and waitress. (AR 392.) Plaintiff has a driver's license and drives a car. (AR 392.)

Migraines and body pain disrupt plaintiff's focus and are the chief impediments to her work. (AR 392.) Plaintiff has spots over her body, and many of them are of undetermined origin. (AR 393.) Plaintiff feels sharp pain when the spots first come out. (AR 393.) The spots become dry and scaly, peel and become sore. (AR 394.) Based on pamphlets provided to plaintiff, she believes she has fibromyalgia because her bones ache, she is tired all the time, and she experiences mood swings. (AR 394.) Plaintiff's back hurts with pain shooting from her neck to her back. (AR 395.) Plaintiff tires and

lies down as much as she can. (AR 395.)

Plaintiff takes less medication than previously. (AR 395.) The medications cause drowsiness and stomach sickness for which she take nausea medication. (AR 395.)

Plaintiff is able to lift up to five to ten pounds. (AR 396.) Plaintiff is able to walk for a block before needing to stop. (AR 396.) Plaintiff can stand for an hour or two before needing to sit. (AR 396.) Plaintiff is unable to kneel, stoop or squat to the ground without pain. (AR 396.)

Plaintiff attributes her divorce "over my illness" and attributes her former husband as "always telling me I'm crazy and nothing wrong with me." (AR 397.) Plaintiff is able to keep her mind on things for two hours at a time "not very often." (AR 397.) At times, plaintiff believes others are out to get her and she has crying spells. (AR 397.) Plaintiff takes Zoloft for her depression. (AR 398.) Sometimes plaintiff feels her depression is improving. (AR 399.) Plaintiff engages in no social activities, hobbies or sports. (AR 400.)

### *Testimony Of Vocational Expert Ken Ferra*

At the January 7, 2004 ALJ hearing, vocational expert Ken Ferra ("Mr. Ferra") identified plaintiff's past relevant work of receptionist (sedentary and semiskilled), cleaner (light and unskilled), waitress (light and unskilled), housekeeper (light and unskilled), and desk clerk (light and semiskilled). (AR 401.) Mr. Ferra noted plaintiff's transferrable general clerical skills. (AR 401.)

As a hypothetical, the ALJ asked Mr. Ferra to assume: (1) plaintiff's age, education and work background; (2) ability of lift 10 pounds frequently and 20 pounds occasionally; (3) ability to walk about six hours in an eight-hour workday; (4) ability to sit six hours in an eight-hour workday; (5) mild limitation to perform or maintain daily living, social functioning, concentration, persistence or pace; and (6) moderate limitation in ability to carry out detailed instructions. (AR 402.) Mr. Ferra opined that plaintiff's past relevant work of "cleaner occupation and the housekeeping activity would [be] compatible with that hypothetical. (AR 402.)

As a hypothetical, plaintiff's counsel asked Mr. Ferra to assume the characteristics of the ALJ's hypothetical along with inability to concentrate for two-hour intervals. (AR 402.) Mr. Ferra opined that with such limitation, an individual could perform neither plaintiff's past relevant work nor any work. (AR 402.)

**The ALJ's Findings**

With his February 25, 2004 decision, the ALJ identified the specific issue of whether plaintiff is under a disability, which is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than 12 months." (AR 14.) The ALJ noted that for plaintiff to qualify for disability insurance benefits, she needed to establish disability no later than September 2003, the date through which he earned sufficient quarters of coverage to remain insured. (AR 14.) In determining plaintiff is not disabled and is ineligible for disability insurance benefits, the ALJ found:

1. Plaintiff has migraine headaches and depression which are "severe" but which do not meet or medically equal an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").

2. Plaintiff's allegations regarding her limitations are not credible or fully supported.

3. Plaintiff has the residual functional capacity to lift/carry more than 20 pounds occasionally and 10 pounds frequently, stand, walk and sit for six hours in an eight-hour workday, and perform simple repetitive tasks.

4. Plaintiff's medically determinable headaches and depression do not prevent her to perform her past relevant work. (AR 17.)

**DISCUSSION**

**Standard of Review**

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

/ / /

/ / /

/ / /

contrary to treating physician's findings).[1]  Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion.  *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is substantial evidence to support the administrative finding, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).  Plaintiff bears the burden to prove that she is disabled which requires presentation of "complete and detailed objective medical reports of her condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).  "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Here, plaintiff claims disability since October 20, 2000 based on, among other things, a nervous breakdown, mental instability, menopause, headaches and depression.  (AR 45.) As discussed below, this Court finds that the ALJ properly evaluated the evidence and that his conclusion that the plaintiff is not disabled is based on proper legal standards and substantial evidence.

/ / /

---

[1] "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

**Plaintiff's Statements Regarding Migraines**

Plaintiff contends that the ALJ failed to address her statements regarding the severity of her migraines on her residual functional capacity. The Commissioner responds that the ALJ properly considered plaintiff's headache complaints in that her headaches are treatable by medication and her headache complaints were sporadic.

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). "An ALJ cannot be required to believe every allegation of disabling pain." *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing court may not engage in second-guessing. *Thomas*, 278 F.3d at 959. A reviewing court will not reverse an ALJ's credibility determinations "based on contradictory or ambiguous evidence." *Johnson*, 60 F.3d at 1434 (citing *Allen*, 749 F.2d at 579 (9th Cir. 1984)). "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c). An ALJ's finding that a claimant generally lacked credibility is permissible basis to reject excess pain testimony.

/ / /

/ / /

/ / /

*See also* S.S.R. 96-7p.[2]

An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
4. Treatment, other than medication, for relief of pain;
5. Functional restrictions;
6. Claimant's daily activities;
7. Unexplained, or inadequately explained, failure to seek treatment or to follow up a prescribed course of treatment; and
8. Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *see* 20 C.F.R. §§ 404.1529, 416.929.

After summarizing the medical evidence, the ALJ addressed plaintiff's pain allegations:

> Overall, the nature, location, onset, duration, frequency, radiation and intensity of the claimant's alleged impairments are not corroborated by the record to the degree alleged. There is no doubt that the claimant has experienced some pain, but certainly not to the degree alleged. The claimant has not received treatment consistent with a chronic pain syndrome such as biofeedback, acupuncture, use of TENS unit, or attendance at a pain management clinic. (AR 15-16.)

The gist of plaintiff's criticism is that the ALJ failed to adequately explain why he discounted plaintiff's migraine complaints. As noted by the Commissioner, the medical record does not support plaintiff debilitating claims.

The medical evidence reflects plaintiff was treated for a variety of ailments and complained of

---

[2] Social Security Ruling 96-7p sets out factors to assess a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

1  headaches during times of stress. (AR 106, 114, 198.) In December 2000, plaintiff was provided
2  Imitrex which produced "dramatic relief" and was advised to use Imitrex when her symptoms first begin.
3  (AR 116.) The Commissioner correctly notes the absence of headache treatment during the first half of
4  2001 although plaintiff sought treatment for many other matters and had successful headache treatment
5  during the second half of 2001. May 2001 notes reflect "go back to work." (AR 306.) In July and
6  September 2001, plaintiff was treated with Benadryl and Toradol for migraine episodes. (AR 256, 266.)
7  After October 9, 2001 headache complaints, plaintiff was instructed to decrease sugar, caffeine and
8  smoking. (AR 247, 251.) October 17, 2001 mental health notes reflect: "This client applied for SSI and
9  secondary gain is suspect." (AR 188.) In February 2002, plaintiff was "doing well." (AR 223, 225.)
10 In March 2002, plaintiff complained of headaches when she noted she had applied for SSI. (AR 180-
11 183.) A July 12, 2002 head CT was negative. (AR 301.) July 17, 2002 notes reflect Midrin helps
12 plaintiff's headaches. (AR 300.) In August 2002, plaintiff complained of headaches from stress, anger,
13 chocolate, perfumes and foods and was told to reduce stress. (AR 201.) In January 2003, plaintiff
14 requested a DMV physical to regain her driver's license. (AR 386.) Plaintiff's headache complaints
15 resumed after she claimed she hit her head on a car door. (AR 353.) In October 2003, plaintiff noted
16 her headaches "come and go." (AR 351.) A November 2003 MRI scan of plaintiff's brain was negative.
17 (AR 348.)

18        The medical record is the ALJ's specific grounds to discount plaintiff's headache complaints in
19 that plaintiff received sporadic treatment for short-lived headaches. Medical evidence is "a relevant
20 factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*,
21 261 F.3d 853, 857 (9th Cir. 2001); *see Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995) (claimant has
22 burden to prove she has a qualified impairment that meets the 12-month duration requirement). The
23 medical record demonstrates conservative treatment for plaintiff's headaches, and such treatment was
24 inconsistent with her allegedly disabling symptoms. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th
25 Cir. 1995) ("conservative treatment" suggests "a lower level of both pain and functional limitation.");
26 *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982) (existence of an emotional disorder "is not per
27 se disabling", especially if "amendable to control.") The ALJ correctly explained that plaintiff had not
28 received treatment consistent with chronic pain syndrome. (AR 16.) Plaintiff's headache treatment was

limited to medication and negative tests, and the medication produced favorable results. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered absence of prescription of "serious medical treatment for this supposedly excruciating pain.") Moreover, plaintiff testified that she helped her mother to clean homes to earn $500-$600 monthly. (AR 391.) Plaintiff points to no meaningful error in the ALJ's evaluation of plaintiff's headache complaints, and this Court is not in a position to second guess the ALJ on the matter.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded plaintiff is not disabled. This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff disability insurance benefits or to remand for further proceedings. This Court DIRECTS the Court's clerk to enter judgment in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff Peggy Worthy and to close this action.

IT IS SO ORDERED.

**Dated:   August 10, 2005**              /s/ Lawrence J. O'Neill
66h44d                                                      UNITED STATES MAGISTRATE JUDGE